In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 06-3174

RYAN L. BELCHER and
DARAINA GLEASON,

*Plaintiffs-Appellants*,

*v.*

VAUGHN NORTON and
TOWN OF ORLAND,

*Defendants-Appellees*.

———————

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 05 C 101—**Theresa L. Springmann,** *Judge.*

———————

ARGUED FEBRUARY 8, 2007—DECIDED AUGUST 15, 2007

———————

Before RIPPLE, MANION and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.*   Ryan L. Belcher and Daraina Gleason brought this action against Deputy Marshal Vaughn Norton and the Town of Orland under 42 U.S.C. § 1983. They alleged that they were subject to an unlawful seizure in violation of the Fourth Amendment to the Constitution of the United States, as made applicable to the states by the Fourteenth Amendment. They also alleged that their rights to procedural and substantive due process under the Fourteenth Amendment were violated. They

originally filed a complaint in state court, but the case subsequently was removed to the United States District Court for the Northern District of Indiana. The district court granted the defendants' motion for summary judgment.[1] Mr. Belcher and Ms. Gleason timely appealed. For the reasons set forth in this opinion, we affirm in part and reverse in part the judgment of the district court.

# I

# BACKGROUND

### A.

Ms. Gleason was driving on the Indiana Toll Road with her fiancé,[2] Mr. Belcher, in her 1998 Plymouth Voyager minivan. Ms. Gleason and Mr. Belcher are African-American. While the couple was driving along the Toll Road, the minivan's transmission failed, and they had to stop along the side of the road. Ms. Gleason got a ride to Fort Wayne from a passing motorist while Mr. Belcher remained in the van. An Indiana state trooper patrolling along the Toll Road came upon the stopped vehicle and asked Mr. Belcher why the minivan was stopped along the berm of the road. The officer subsequently arrested Mr. Belcher for driving without a license and ordered the van towed to

---

[1] The district court dismissed the plaintiffs' claims under 42 U.S.C. §§ 1981, 1982 and 1985. The plaintiffs did not appeal these dismissals; therefore, these claims are not before this court.

[2] Ms. Gleason and Mr. Belcher have since married, and Ms. Gleason has taken her husband's last name. Because the briefs refer to Ms. Gleason by her maiden name, we also shall refer to her in the same manner throughout this opinion.

Bill's Professional Towing ("Bill's Towing") in Orland, Indiana. The van was impounded at that location.

Several days later, Ms. Gleason and Mr. Belcher went to Bill's Towing to retrieve some personal belongings that they had left in the van. They spoke with the owner and operator, Wilburn McClanahan, about retrieving certain court documents and other personal items from the van, and they were directed to the tow yard. Once at the tow yard, McClanahan informed the couple that they were not allowed to leave the premises until either the towing and impoundment fees were paid or the title was signed over to Bill's Towing. Mr. Belcher proceeded to remove a variety of items from the van; McClanahan insisted that the couple was permitted to remove only court documents. When Mr. Belcher began removing a radio from the minivan, McClanahan inquired as to whether the couple was going to pay the storage and towing fee. Mr. Belcher stated that he would pay those charges, but that he did not have the money with him. He requested to use the phone to call his mother in order to make payment arrangements. McClanahan did not allow Mr. Belcher use of the phone and further stated that, because the plaintiffs had removed property from the van, they were responsible for immediate payment. The situation escalated into a heated debate, and McClanahan called the police.

Almost immediately thereafter, Vaughn Norton, the Acting Marshal for the Town of Orland, arrived on the scene. By that time a group of four Caucasian males, employees of Bill's Towing, had gathered and would not permit Mr. Belcher and Ms. Gleason to leave the premises until they either paid the impoundment fees or signed the vehicle's title over to Bill's Towing. The plaintiffs requested that a state trooper be called to the scene, but Deputy

Marshal Norton refused, stating, " 'there's no need to call a State Trooper, I am the law.'" R.29 at 3.

Mr. Belcher and Ms. Gleason attempted to walk from the van to the entrance of the towing yard. Deputy Marshal Norton repeated that the two plaintiffs could not leave until they had signed the van's title over to Bill's Towing. The plaintiffs got in their car and attempted to leave, but were blocked by a red city truck and a Bill's Towing truck. The plaintiffs then got out of the car. At that point Deputy Marshal Norton threatened Mr. Belcher with arrest for disorderly conduct if he did not sign over title of the vehicle. Mr. Belcher then asked to see Deputy Marshal Norton's badge, and, for the first time, Deputy Marshal Norton produced it. Mr. Belcher told Deputy Marshal Norton that he could not "make" them sign anything; Deputy Marshal Norton replied: " '[E]ither sign the title over or you will be arrested for disorderly conduct.'" *Id.* at 4.

Mr. Belcher again refused to sign over the minivan's title, and Deputy Marshal Norton went over to the red truck, came back holding a pair of handcuffs and walked towards Mr. Belcher as if to place him under arrest. Deputy Marshal Norton then stated that he was " 'calling for back-up.'" *Id.* He again threatened Mr. Belcher with arrest if Mr. Belcher continued to refuse to sign the title over to Bill's Towing. Mr. Belcher continued to refuse to sign. Ms. Gleason began crying. Deputy Marshal Norton then asked Ms. Gleason to sign over the title, and she complied. The plaintiffs immediately proceeded to the local sheriff's department to file a complaint against Deputy Marshal Norton, but were told there were no grounds upon which to file such a complaint.

The couple subsequently filed this action. Their § 1983 claim named Deputy Marshal Norton and the Town of Orland as defendants. It alleged that the defendants' actions had subjected them to an illegal seizure and had violated their procedural and substantive due process rights under the Fourteenth Amendment.

**B.**

The district court granted the defendants' motion for summary judgment on all counts. The court first analyzed the plaintiffs' § 1983 claims of unlawful seizure under the Fourth Amendment. The court determined that Mr. Belcher and Ms. Gleason had been "seized" as that term is employed in Fourth Amendment jurisprudence. The court then considered whether this seizure was unreasonable. It stated that

> a reasonable officer would be justified in believing that [Mr. Belcher] was not entitled to take property from the vehicle and had committed a criminal offense. [Ms.] Gleason likewise participated in this unlawful conduct. Under these circumstances, [Deputy Marshal] Norton's refusal to let them leave the towing yard was not unreasonable.

R.75 at 11. The court concluded that Deputy Marshal Norton had probable cause to arrest the plaintiffs for theft or criminal conversion. Because the seizure was not unreasonable under the circumstances, the district court concluded that no violation of the Fourteenth Amendment had occurred.

The district court then proceeded to analyze the plaintiffs' § 1983 procedural due process claim. The court first

discussed whether the plaintiffs had a property interest in the van. The court concluded that, even if Bill's Towing had a lien on the vehicle, Ms. Gleason nevertheless retained a property interest in the minivan and, therefore, was entitled to some process in connection with the deprivation of this property. The district court further ruled that the property deprivation was a result of random and unauthorized action rather than an established state procedure. Therefore, the court continued, the plaintiffs' federal due process claim turned on the availability of an adequate post-deprivation procedure. The defendants had urged that the Indiana Tort Claims Act ("ITCA") afforded the plaintiffs an adequate state law remedy. The plaintiffs had countered that the ITCA did not provide an adequate remedy because the law enforcement immunity provision would insulate Deputy Marshal Norton from liability. The district court determined that the ITCA's immunity provision would not apply because Deputy Marshal Norton's actions did not constitute the enforcement of law.

Finally, the district court addressed the plaintiffs' substantive due process claim. The district court ruled that Ms. Gleason had not pointed to a separate constitutional violation necessary to support a substantive due process claim; further, because the court had concluded, in the context of the procedural due process claim, that state law remedies were adequate, Ms. Gleason could not state a substantive due process claim.

## II

## DISCUSSION

We review a district court's grant or denial of summary judgment de novo. *Magin v. Monsanto Co.*, 420 F.3d 679, 686

(7th Cir. 2005). All facts and reasonable inferences must be construed in favor of the non-moving party. *Id.* Our role is not to evaluate the weight of the evidence, to judge the credibility of witnesses or to determine the ultimate truth of the matter, but rather to determine whether there exists a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law." *Magin*, 420 F.3d at 686 (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of demonstrating that these requirements have been met and may discharge this responsibility by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 323. In order to overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, the existence of a mere scintilla of evidence is not sufficient to fulfill this requirement; the non-moving party must show that there is evidence upon which a jury reasonably could find for the plaintiff. *Anderson*, 477 U.S. at 251-52. "The court should neither 'look the other way' to ignore genuine issues of material fact, nor 'strain to find' material fact issues where there are none." *Patrick v. Jasper*, 901 F.2d 561, 565 (7th Cir. 1990) (internal citations omitted).

**A.**

The district court determined that the plaintiffs had been "seized" for purposes of the Fourth Amendment, but also determined this seizure had been reasonable. Consequently, ruled the district court, there had been no Fourth Amendment violation. The plaintiffs submit that Deputy Marshal Norton did not have probable cause to arrest Mr. Belcher and Ms. Gleason for theft or criminal conversion and that, therefore, the seizure was not reasonable. In order to establish a violation of the Fourth Amendment, the plaintiffs must establish that (1) Deputy Marshal Norton's conduct constituted a "seizure" and (2) the seizure was unreasonable. *See Donovan v. City of Milwaukee*, 17 F.3d 944, 948 (7th Cir. 1994); *see also Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994).

**1.**

In order to establish that Deputy Marshal Norton's actions constituted a "seizure," the plaintiffs must demonstrate, from all the circumstances surrounding the incident, that a reasonable person in such a situation would have believed that he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The plaintiffs must show that they were touched physically by the police or that they yielded to a show of authority. *California v. Hodari D.*, 499 U.S. 621, 625-26 (1991). The governmental termination of freedom of movement must be intentional. *Donovan*, 17 F.3d at 948.

Upon examination of the record, we believe that the district court correctly concluded that the plaintiffs were seized within the meaning of the Fourth Amendment. The record makes clear that Deputy Marshal Norton repeatedly

informed Mr. Belcher that he could not leave the towing yard unless and until he signed over the title to the van. In addition, Deputy Marshal Norton told Mr. Belcher he could be arrested for disorderly conduct if he refused to sign over the vehicle. Simply stated, the Deputy Marshal made it very clear that he intended to prevent Mr. Belcher and Ms. Gleason from leaving. The officer clearly asserted his authority in a way that the plaintiffs reasonably could construe as a declaration that they were not free to leave the tow yard. Such a declaration by a police officer is sufficient to constitute a "seizure" for purposes of the Fourth Amendment.[3]

## 2.

In order to constitute a Fourth Amendment violation, however, a governmental seizure must be unreasonable. *See Donovan*, 17 F.3d at 949. The "test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . [it] requires careful attention to the facts and circumstances of each particular case." *Id.* (internal citations and quotation marks omitted). To determine whether a particular search is unreasonable, we must balance "the extent of the intrusion against the need for it." *Id.* (internal citations omitted).

---

[3] We believe the record establishes that, even if some of Deputy Marshal Norton's remarks were directed principally toward Mr. Belcher, Ms. Gleason reasonably could have understood that her freedom of movement also was restricted. *See Brendlin v. California*, 127 S. Ct. 2400, 2407-08 (2007) (holding that a vehicle's passenger had been seized and was entitled to challenge the traffic stop). Indeed, since the van was titled in her name, she alone had the power to transfer ownership.

We believe that the plaintiffs have presented sufficient factual issues to raise a very serious question about the reasonableness of the seizure. The record before us demonstrates, at the very least, that a genuine issue of triable fact exists as to whether Deputy Marshal Norton had probable cause to arrest the plaintiffs for theft or criminal conversion. The defendants characterize the entire incident as an attempt on the part of the plaintiffs to "dump" the van on the owner of the towing business. The plaintiffs, on the other hand, insist that they simply intended to retrieve legal papers and personal belongings from the van. Whether the Deputy Marshal had probable cause to effect an arrest is measured by an objective standard: Would a police officer in his situation reasonably believe that a criminal offense had been, or was being, committed. *United States v. Reis*, 906 F.2d 284, 289 (7th Cir. 1990).

Deputy Marshal Norton certainly should have known that the lien statute, I.C. § 9-22-5-15, gave Bill's Towing a lien on the vehicle but not on its contents. The statute provides:

> (b) An individual, a firm, a partnership, a limited liability company, or a corporation that provides towing services for a motor vehicle, trailer, semitrailer, or recreational vehicle at the request of:
>
>> (1) the person who owns the motor vehicle, trailer, semitrailer, or recreational vehicle; or
>>
>> (2) an individual, a firm, a partnership, a limited liability company, or a corporation on whose property an abandoned motor vehicle, trailer, semitrailer, or recreational vehicle is located;
>
> has a lien on the vehicle for the reasonable value of the charges for the towing services and other related costs.

I.C. § 9-22-5-15(b).[4] This language clearly limits the lien to the vehicle itself, not its contents.

The defendants also assert that, because Mr. Belcher attempted to remove a radio from the van, he was diminishing the value of the lien on the van. However, the record does not establish with any clarity whether the radio was portable or permanently affixed to the vehicle.[5] There is, at the very least, a genuine issue of triable fact as to whether Deputy Marshal Norton could have concluded reasonably that he had probable cause to believe that the plaintiffs had the requisite criminal mens rea to commit the crime of criminal conversion, *see Sam & Mac, Inc. v. Treat*, 783 N.E.2d 760, 766 (Ind. Ct. App. 2003), or the specific intent necessary to commit the crime of theft, *see Mitchell v. State*, 690 N.E.2d 1200, 1209 (Ind. Ct. App. 1998).

**3.**

The defendants further assert that, even if Deputy Marshal Norton had violated the Fourth Amendment rights of the plaintiffs, he is entitled to qualified immunity because, at the time that he acted, it would not have been clear to a reasonable police officer that his actions were in

---

[4] This statutory provision has been amended and its new provisions became effective on July 1, 2007. 2007 Ind. Legis. Serv. P.L. 191-2007 (H.E.A. 1425). The amendments to the statute do not bear on the issues in this case.

[5] The record does not demonstrate whether Mr. Belcher had to use any tools to remove the radio from the van, nor does the record clarify with any certainty how the radio was affixed to the van. However, at his deposition, Mr. Belcher testified that he was able to remove the radio from the van. R.59, Ex. 2 at 50.

violation of the law. As a general matter, the doctrine of qualified immunity can shield a public official such as Deputy Marshal Norton from civil liability if he can demonstrate that he was performing a discretionary function and that a reasonable law enforcement officer would have believed that, at the time he acted, his actions were within the bounds of the law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Court reaffirmed this basic principle and gave additional guidance as to its implementation. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202; *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986). *Saucier* also articulates a two-part inquiry for addressing qualified immunity claims. The first inquiry requires an examination of the record to determine whether the facts, taken in the light most favorable to the plaintiffs, show that the defendants violated a constitutional right. *Id.* at 201. If such a constitutional violation is established, it then becomes necessary to address whether the constitutional right clearly was established at the time in question. *Id.* In sum, qualified immunity protects an official from suit and from liability for civil damages when, *at the time of the challenged action*, the contours of the constitutional right were not so defined as to put the official on notice that his conduct violated the Constitution. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

As we have noted earlier, if we construe the facts in the light most favorable to the plaintiffs, there is a genuine issue of triable fact as to whether Deputy Marshal Norton violated the Fourth Amendment rights of the plaintiffs. Moreover, accepting such a construction of the facts, we

think that it is clear that a reasonable police officer, acting at the time that Deputy Marshal Norton acted, would have known that he lacked probable cause to arrest the plaintiffs for theft or for criminal conversion. In short, *on this record*, qualified immunity is not available to Deputy Marshal Norton.

**B.**

We now examine whether the district court erred in granting summary judgment to the defendants on the plaintiffs' procedural and substantive due process claims. Both of these allegations focus on the defendants' successful efforts to induce Ms. Gleason to transfer her ownership of the van to Bill's Towing.

**1.**

In order to maintain successfully a procedural due process claim, the plaintiffs must show that they were deprived of a constitutionally protected interest in life, liberty or property. If the plaintiffs can establish such a loss, we then must determine what process was due regarding that loss. *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996).

There is no dispute that Bill's Towing had a lien on Ms. Gleason's van for the towing and storage charges incurred by the plaintiffs when the vehicle was removed from the Indiana Toll Road. *See* I.C. § 9-22-5-15(b). However, the existence of this lien did not eliminate Ms. Gleason's property interest in her van. By paying the fee for the towing and storage services, Ms. Gleason could have satisfied the lien, and Bill's Towing would have been

under a statutory duty to release the van to her. I.C. § 9-22-5-15(c). Therefore, because she still had a property interest in her van, Ms. Gleason had a right to some process, before her property interest was terminated involuntarily.

In *Parratt v. Taylor*, 451 U.S. 527, 539 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986), the Supreme Court of the United States held that post-deprivation process sometimes may provide adequate procedural protection for the deprivation of property rights. Specifically, in *Parratt*, the Court countenanced two situations in which post-deprivation process could be appropriate: (1) where quick action is required on the part of the state and (2) where providing any meaningful pre-deprivation process is impracticable. *Id.* The Court further clarified the second instance by stating that such a situation would occur where the tortious loss of property is due to "a random and unauthorized act by a state employee." *Id.* at 541. More specifically, if the property deprivation occurs as a result of a random unauthorized act, it does not constitute a violation of a litigant's procedural due process rights where the state provides "a meaningful post-deprivation remedy." *Easter House v. Felder*, 910 F.2d 1387, 1396 (7th Cir. 1990) (internal citations omitted). Therefore, Deputy Marshal Norton's depriving Ms. Gleason of her vehicle does not amount to a deprivation of her property in the constitutional sense *if* his act was random and unauthorized and *if* there is an adequate state law remedy that can provide her meaningful relief.

Reading the record in the light most favorable to the plaintiffs, as we must in the procedural posture of this case, there is little question that the actions attributed to Deputy Marshal Norton must be considered random and unauthorized. The State of Indiana has a statutory scheme

that regulates impounded and abandoned vehicles. Indiana law provides the owner of an impounded vehicle twenty days within which to claim the vehicle. I.C. § 9-13-2-1(6). Therefore, the plaintiffs had approximately two additional weeks to claim the van before it would be considered abandoned under Indiana law. In short, Deputy Marshal Norton's actions did not comport with the statutory procedure, and, therefore, his actions were random and unauthorized for the purposes of *Parratt.*

We therefore must turn to the question of whether state law affords the plaintiffs an adequate remedy. Indiana has enacted the Indiana Tort Claims Act ("ITCA"). I.C. § 34-13-3-1 et seq. We have held, in *Hossman v. Spradlin*, 812 F.2d 1019 (7th Cir. 1987), that, as a general rule, the ITCA provides a "constitutionally adequate remedy to redress property loss caused by a state officer." *Id.* at 1023. Nevertheless, the plaintiffs submit that this general rule cannot govern the situation before us because the ITCA contains a law enforcement immunity provision that shields state actors, acting within the scope of their employment, who are engaged in the "adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment." I.C. § 34-13-3-3(8).[6] In

---

[6] Indiana courts have defined false imprisonment as "the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent." *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002). Indiana courts have stated also that "[a] defendant may be liable for false arrest when he or she arrests the plaintiff[s] in the absence of probable cause to do so." *Id.* The circumstances of this proce-

(continued...)

the plaintiffs' view, Deputy Marshal Norton was "attempt-
ing to apply law enforcement procedures" and thus, the
ITCA's law enforcement immunity provision applies.[7]

To resolve this issue, we must determine, as a threshold
matter, what constitutes an adequate state law remedy
for the purposes of procedural due process analysis. The
Supreme Court has made clear that, in order to constitute
an adequate remedy, the remedy provided by state law
need not be the same as that available under § 1983. *See
Hudson*, 468 U.S. at 535; *Parratt*, 451 U.S. at 544; *Parrett v.
City of Connersville, Indiana*, 737 F.2d 690, 697 (7th Cir. 1984).
Nevertheless, the relief afforded by the state remedy cannot
be "meaningless or non-existent." *Easter House*, 910 F.2d at
1406; *see also Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir.
1996); *Cronin v. Town of Amesbury*, 81 F.3d 257, 260 (1st Cir.
1996) (per curiam); *cf. Briscoe v. La Hue*, 663 F.2d 713, 718
(7th Cir. 1981) (noting that common law immunities cannot
be imported wholesale into § 1983 analysis because the

---

[6] (...continued)
dural due process claim do not involve false arrest or false
imprisonment under Indiana tort law. Therefore, these excep-
tions to the law enforcement immunity provision do not apply.

[7] *See, e.g.*, *East Chicago Police Dep't v. Bynum*, 826 N.E.2d 22, 26
(Ind. Ct. App. 2005) (holding that police officers were not
entitled to immunity under the ITCA law enforcement immunity
provision where the officers violated their statutory duty to
drive with due regard for the safety of all individuals while
acting within the scope of their employment); *City of Hammond
v. Reffitt*, 789 N.E.2d 998, 1001 (Ind. Ct. App. 2003) (holding
police officers were entitled to immunity where the officers
decided not to arrest an intoxicated driver who subsequently
died of hypothermia in his vehicle).

purposes of the statute would be frustrated if state executive officials were afforded absolute immunity).

We now must analyze the ITCA in light of these principles to determine whether, in this case, the ITCA can be considered an adequate remedy. In *King v. Northwest Security, Inc.*, 790 N.E.2d 474 (Ind. 2003), the Supreme Court of Indiana analyzed this provision at some length.[8] The court explained that the law enforcement immunity provision "restricts the immunity to the adoption and enforcement of laws that are within the assignment of the governmental unit." *Id.* at 482. The police are a "governmental unit" within the meaning of the statute. *Id.* The legislature, wrote the court, enacted the law enforcement immunity provision to ensure that "a governmental entity [would] be immune only for failing to adopt or enforce a law that falls within the scope of the entity's purpose or operational power." *Id.* at 483. Applying this principle in *King*, the Supreme Court of Indiana determined that a school district was not "enforcing" a law when addressing the matter of school security. *Id.*

The Supreme Court of Indiana also has addressed the meaning of "enforcement" in the law enforcement immunity provision. The court stated that "enforcement" should

---

[8] The law enforcement immunity provision formerly was codified at I.C. § 34-13-3-3(7). In 2001, the statute was amended and this provision currently is found at § 34-13-3-3(8). *See East Chicago*, 826 N.E.2d at 26 n.6 (noting the statutory amendment). When the Supreme Court of Indiana decided *King v. Northwest Security, Inc.*, 790 N.E.2d 474 (Ind. 2003), the law enforcement immunity provision was found at § 34-13-3-3(7), and therefore that court references the provision using its then-current codification.

be construed to extend beyond traditional law enforcement activities, but that enforcement is "limited to those activities in which a governmental entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof." *Mullin v. Mun. City of South Bend*, 639 N.E.2d 278, 283 (Ind. 1994).

In *Minks v. Pina*, 709 N.E.2d 379, 383 (Ind. Ct. App. 1999), the Court of Appeals of Indiana determined that immunity was proper when two police officers stopped an intoxicated motorist and decided not to arrest or detain him because it would have taken too much time to process the required paperwork. The court held that, even though the officers' conduct was "egregious," their actions fell within the scope of enforcement or failure to enforce the law, and therefore they were entitled to statutory immunity. *Id.* at 382.

In light of this precedent, we think it clear that Deputy Marshal Norton was acting within the scope of his employment and was enforcing the law.[9] Therefore, he is entitled to the protection of the law enforcement immunity provision. Deputy Marshal Norton arrived on the scene when called by McClanahan. While at the tow yard, he clearly was acting as a police officer. He presented a badge when asked and, at all times, acted in his capacity as Deputy Marshal of the Town of Orland. Whether a trier of fact eventually credits the account of the plaintiffs or the account of Deputy Marshal Norton, the law enforcement

---

[9] The district court reached a contrary conclusion in interpreting Indiana law. It is of course our responsibility to assess independently a question of state law. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991).

immunity of the ITCA would provide the Deputy Marshal with a shield against liability. Indiana courts explicitly have accorded immunity to officers who exhibit "egregious conduct." *Minks*, 709 N.E.2d at 382. The decisions of the Indiana courts make clear that the immunity provided by this statutory shield "extends well beyond traditional law enforcement activities." *Id.* Indeed, the essence of Deputy Marshal Norton's defense is that he was attempting to compel Mr. Belcher to obey the law. Therefore, he is entitled to immunity under I.C. § 34-13-3-3(8).

Because we conclude that Deputy Marshal Norton is entitled to the broad statutory immunity afforded by ITCA, we also must conclude that the statute does not provide an adequate state law remedy to the plaintiffs. Relegating the plaintiffs to this state statutory scheme would deprive them of any meaningful avenue to seek redress for the deprivation that they claim to have suffered. Therefore, we must conclude that the district court erred in granting summary judgment in favor of the defendants on the plaintiffs' procedural due process claim.

**2.**

Finally, the plaintiffs urge that their substantive due process rights were violated.[10] The Supreme Court of the

---

[10] The district court determined that the plaintiffs had waived their substantive due process claim. Upon examination of the record, we must conclude respectfully that the district court erred in this determination. The plaintiffs contended in the district court and on appeal that Deputy Marshal Norton's conduct deprived them of substantive due process because he

(continued...)

United States has made clear, and this court similarly has cautioned, that the scope of substantive due process is very limited. *See, e.g.*, *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005) (citing *Washington v. Glucksberg*, 521 U.S. 702 (1997)). The Due Process Clause is intended as a "limitation of the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).

We have stated that substantive due process, at its essence, protects an individual from the exercise of governmental power without a reasonable justification. *See Tun*, 398 F.3d at 902. In essence, it affords protection of the individual against arbitrary action of government. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Where the exercise of government authority involves law enforcement officials, the Supreme Court has stated that a plaintiff's substantive due process rights are violated where the alleged abuse of government power "shocks the conscience." *Rochin v. California*, 342 U.S. 165, 172 (1952).

As this case comes to us, the parties offer two very different characterizations of the situation that unfolded in the tow yard. The plaintiffs submit that Deputy Marshal Norton, relying on the police powers vested in him by

---

[10] (...continued)

extorted the van from Ms. Gleason by threatening the plaintiffs with arrest if they failed to sign the van over to Bill's Towing. This use of governmental power, they contend, is the sort of use of governmental power that shocks the conscience under *Rochin v. California*, 342 U.S. 165, 172 (1952). In our view, this argument was developed factually both in the plaintiffs' brief before this court and in their brief before the district court.

virtue of the office he held, extorted the van from the plaintiffs by threatening to use his power of arrest if they did not comply. The defendants, on the other hand, suggest that the plaintiffs were in the process of "dumping" the van on the tow yard owner and that the Deputy Marshal, suspecting that a crime was being committed, was well within his rights as a police officer when he pointed out the legal consequences of such an action to the plaintiffs. Because this case comes to us after the grant of summary judgment to the defendants, we must construe the facts in the light most favorable to the plaintiffs. Given that constraint, we must conclude that a trier of fact would be entitled to say that the Deputy Marshal's actions, as characterized by the plaintiffs, shock the conscience, as that term is employed in modern substantive due process analysis.

## C.

The plaintiffs also urge that the Town of Orland is liable for the alleged constitutional violations of the plaintiffs' rights because Deputy Marshal Norton was a "final policymaker" for the Town, and, therefore, municipal liability should attach. *See, e.g.*, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("where action is directed by those who establish governmental policy, the municipality is . . . responsible"); *see also Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994) ("a single act or decision of a final policymaker can establish municipal policy"). However, a municipality may not be held liable based upon the doctrine of respondeat superior. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). We think it clear, on this record, that Deputy Marshal Norton was not a final policymaker for the Town

of Orland. Therefore, the Town is not liable under 42
U.S.C. § 1983.

**Conclusion**

For the foregoing reasons, we affirm the district court's
dismissal of the Town of Orland. We reverse the district
court's dismissal of the Fourth Amendment and procedural
and substantive due process claims against the defendants
because, on this record, these claims present genuine
issues of triable fact. Accordingly, the judgment of the
district court is affirmed in part and reversed in part. The
plaintiffs may recover their costs from Deputy Marshal
Norton.

AFFIRMED in part and REVERSED in part

MANION, *Circuit Judge*, concurring in part and dissenting
in part.  After Daraina Gleason's vehicle broke down on
the Indiana Toll Road, the state police had it towed to
Bill's Towing in Orland, Indiana. The vehicle at issue in
this case was a 1998 Plymouth Voyager minivan with
272,833 miles on its odometer and a failed transmission. It
was registered to Gleason, who received it as a gift from
the mother of her then-fiancé, Ryan Belcher. It is undis-
puted that the Bill's Towing had a valid possessory inter-
est in the impounded minivan under Indiana's lien statute.

A few days after the minivan was impounded, Gleason
and Belcher arrived at Bill's Towing to retrieve some

personal items and possibly the minivan. The confrontation at the tow yard between Belcher, Gleason, and the tow yard employees began when Belcher and Gleason started removing various items from the minivan. Despite Bill's Towing's policy against removing items from impounded vehicles, the tow yard's owner, Wilburn McClanahan, agreed to allow Belcher and Gleason to remove some legal papers and their child's medicine from the minivan. Belcher and Gleason, however, decided to remove many additional items. Gleason made several trips from the minivan to her borrowed car carrying items that Belcher had taken out of the minivan. In addition to the legal papers, the baby medicine, and some tools (including a heavy tire tool and jack), Belcher removed a radio that he had installed in the minivan's dashboard. The fact that Belcher removed the installed radio along with his personal belongings is of particular importance because Indiana's lien statute provided the tow yard with a lien on the vehicle (i.e., the minivan), which includes all of the vehicle's fixtures, such as its tires, its hubcaps, and its installed radio. Thus, when Belcher removed the minivan's radio and refused to return it, he violated the tow yard's possessory interest in the minivan.[1]

When a Bill's Towing employee observed Belcher removing the minivan's radio, he called McClanahan, who then confronted Belcher. McClanahan and Belcher engaged in a heated discussion before McClanahan called the police. The officer who responded was Deputy Marshal Vaughn Norton. The Town of Orland employed

---

[1] Although Bill's Towing posted a rule prohibiting removal of any personal property from impounded vehicles, that policy was not enforceable under the Indiana lien statute.

Norton as its Street Superintendent, but he also was the acting Town Marshal at that time because the regular Town Marshal was deployed in Iraq. Norton also was not wearing a police uniform that day because he was on duty as Street Superintendent. The record indicates that McClanahan told Norton that Belcher had removed the minivan's radio without permission. The parties dispute whether Belcher became verbally abusive to Norton, but they agree that once it was apparent that Belcher and Gleason could not pay the costs necessary to recover the minivan, Norton gave them two options for resolving the standoff: (1) Gleason could sign over the minivan's title to Bill's Towing; or (2) he would arrest Belcher for disorderly conduct. Those stark choices were incomplete. Under Indiana's lien statute, which gives a vehicle's title holder thirty days to recover an impounded vehicle, Ind. Code § 9-22-5-15, Norton should have given Belcher and Gleason an additional choice: return the radio and any other fixtures that they had removed and leave the premises. That latter option would have enabled Belcher and Gleason to make the minivan whole, preserved the tow yard's possessory interest in the vehicle under Indiana's lien statute, allowed Gleason to retain the title to her minivan, and provided her with the remainder of her statutorily mandated period to pay the towing and storage fees and recover the minivan.[2]

---

[2] The entire situation probably could have been resolved if McClanahan would have allowed Belcher and Gleason to use a telephone to call Belcher's mother. Because the vehicle was a gift to Gleason from Belcher's mother, Gleason likely wanted to consult with Belcher's mother before signing over the title. Both testified that if Belcher's mother was not willing to put up

(continued...)

Accordingly, I concur with the court's reasoning that when construing the facts in the light most favorable to Belcher and Gleason, there is a genuine issue of triable facts as to whether Norton violated their Fourth Amendment rights based on his "seizing" them during the confrontation without probable cause. Also at this point, based on the facts contained in the record before the court, qualified immunity is not available to Norton. I also concur with the court's conclusion that the district court erred in granting summary judgment to Norton on Belcher and Gleason's procedural due process claim, because when viewing the record in the light most favorable to Belcher and Gleason, Norton's failure to give them the third option discussed above rendered his conduct random and unauthorized. Furthermore, I concur with the court's reasoning regarding why Norton's entitlement to immunity under the Indiana Tort Claims Act resulted in an inadequate state law remedy for Belcher and Gleason. Finally, I agree with the court that the Town of Orland is not liable under 42 U.S.C. § 1983.

Where I disagree with the court is on its conclusion that, when viewing the record in the light most favorable to Belcher and Gleason, a reasonable trier of fact could

---

[2] (...continued)
the money for the tow lot's towing and storage charge (and likely the additional cost for towing the disabled van to Fort Wayne), Gleason willingly would sign over the title to the minivan. Based on the monetary value of the inoperable minivan vis-a-vis the towing and storage costs owing, a simple call to Belcher's mother probably would have resolved this situation in the same way it ultimately played out, with Gleason signing over the minivan's title and without making a federal case out of it.

conclude that Norton violated Belcher's and Gleason's substantive due process rights. In this circuit, the Supreme Court's decision in *United States v. Russell*, 411 U.S. 423 (1973), "has been found to present 'an extremely narrow opportunity . . . to challenge government conduct.'" *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 865 (7th Cir. 2004) (quoting *United States v. Davis*, 15 F.3d 1393, 1415 (7th Cir. 1994)). "The scope of substantive due process . . . is very limited and protects plaintiffs only against arbitrary government action that 'shocks the conscience.'" *Montgomery v. Stefaniak*, 410 F.3d 933, 939 (7th Cir. 2005) (citation omitted); *see also Bublitz v. Cottey*, 327 F.3d 485, 491 (7th Cir. 2003) ("It is generally only *deliberate* action intended to harm another that is the type of conduct targeted by the Fourteenth Amendment: '[C]onduct *intended* to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.'" (emphasis in original) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (citations omitted))). As we previously have stated, "[i]t is one thing to say that officials acted badly, even tortiously, but—and this is the essential point—it is quite another to say that their actions rise to the level of a constitutional violation." *Tun v. Whitticker*, 398 F.3d 899, 903 (7th Cir. 2005). For that reason, we have "declined to impose constitutional liability in a number of situations in which we find the officials' conduct abhorrent." *Id.* (citing *Bublitz v. Cottey*, 327 F.3d 485 (7th Cir. 2003) (finding no substantive due process violation when police used a tire-deflation devise during a high-speed chase which caused the target vehicle to lose control, hit another vehicle, and kill two people); *Schaefer v. Goch*, 153 F.3d 793 (7th Cir. 1998) (finding no substantive due process violation when officers shot a woman to death on her own front steps during a standoff with the woman's

husband)). While the record could, and very well may, indicate that Norton acted improperly, nothing in the record evinces that his behavior was abhorrent. Despite Belcher's and Gleason's comments in their depositions that "we might possibly be lynched," and "I felt like I was going to be lynched," there is no evidence in the record even remotely describing a physical threat. Norton did not have a weapon. He did not use physical force or violence, did not taunt or mock them, did not use racial or sexual epitaphs, nor did he subject them to public ridicule. Marshal Norton was summoned to resolve a heated argument over property. When he warned Belcher that he would be arrested, Norton also called for backup from his County Sheriff's office. Perhaps intervention by a uniformed, professional officer would have solved the problem, but Norton canceled his call for backup when Gleason reluctantly signed over the title to the minivan to Bill's Towing. The whole process was unfortunately clumsy and mishandled, but by no means shocking to the conscience. Therefore, on the issue of substantive due process, I respectfully dissent.

A true Copy:

    Teste:

 

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*