NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 4, 2020[*]
Decided March 5, 2020

**Before**

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-2305

| | |
|---|---|
| PHILLIP LITTLER, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Indiana, |
| | Terre Haute Division. |
| | |
| *v.* | No. 2:16-cv-175-WTL-DLP |
| | |
| AMBER WALLACE, | William T. Lawrence, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

After the prison mailroom supervisor destroyed a letter from his cousin under a policy restricting communication between current and former inmates, Phillip Littler sued her for enforcing an unconstitutional policy. *See* 42 U.S.C. § 1983. His complaint included several other claims and defendants, but only his First Amendment challenge to the policy proceeded to a bench trial. The district judge concluded that the prison's

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

policy was constitutional because it was related to a legitimate penological interest. Littler appeals, challenging that determination and several pre-trial rulings. We affirm.

Littler is a state prisoner at Wabash Valley Correctional Facility in Indiana. In March 2015, the prison's mailroom received a letter addressed to him from his cousin. Staff inspected the letter, in which Littler's cousin stated that he was on probation. The Indiana Department of Correction has a policy barring communications between current inmates and other offenders, including former Indiana prisoners on probation, without prior approval (which can be requested using a form). *See* IND. DEP'T OF CORR. MANUAL OF POL'Y & PROC., No. 02-01-103(V) (Apr. 15, 2014). Littler's cousin was on county probation but had not served time in an Indiana state prison. Believing that the policy applied to the letter, however, staff confiscated it when they found no record that Littler had been granted approval to communicate with his cousin.

Following Department policy, mailroom staff notified Littler that they had confiscated his letter and that he could challenge the confiscation through the prison's administrative process. *Id.* No. 02-01-103(XIII). Littler did so, but his grievance and appeals were denied. Under the policy, if a grievance specialist determines that the confiscation of any mail is legitimate, staff may dispose of it if the inmate to whom it is addressed does not advise them within 15 days where else to direct the mail. *Id.* No. 02-01-103(XX). Littler failed to advise mailroom staff how he wanted the letter handled, and the supervisor, Jeanne Watkins, later notified him that she had destroyed it.

Littler then sued Watkins, as well as a commissioner of the Indiana Department of Correction, Bruce Lemmon, and the prison's superintendent Richard Brown. He sought damages, a declaration that the policy is unconstitutional, and an injunction preventing its enforcement. The district court screened the complaint under 28 U.S.C. § 1915A and permitted Littler to proceed on a First Amendment claim against Watkins in both her individual and official capacities, but it dismissed the claims against Lemmon and Brown because there were no allegations that they were personally involved in Littler's injury. The district court also did not allow Littler to proceed on a claim that the destruction of the letter was an unreasonable seizure under the Fourth Amendment. Nor did it permit Littler to amend his complaint to add a due-process claim, ruling that Indiana's Tort Claims Act provides sufficient remedies.

At the close of discovery, the defendants moved for summary judgment. The district court denied their motion. Though it could imagine several reasons why the Department of Correction would want to restrict mail between current and former inmates, the court explained, the prison had not presented evidence showing its policy

was logically related to legitimate security concerns. Later, after ordering additional briefing on the scope of Watkins's liability, the court ruled that Watkins was entitled to qualified immunity with respect to the damages claim because destroying the letter under the policy did not violate any clearly established constitutional right. That left only Littler's First Amendment claim for declaratory and injunctive relief against Watkins in her official capacity. (Because a suit against a state official in her official capacity is effectively a suit against the state entity, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), we refer to it in that vein going forward.)

At trial, Littler testified that the policy prevented him from communicating with his cousin and a prospective love interest who was a former Indiana prisoner on work release. He admitted that he had not asked for permission to exchange letters with his cousin or anyone else, and he had not tried to put his cousin on his phone list. Asking for permission to communicate with these individuals would be futile, he thought, because he was housed in a restricted unit. (Approvals to send and receive letters from other offenders are suspended if an inmate is placed on restricted status. *See* IND. DEP'T OF CORR. MANUAL OF POL'Y & PROC., No. 02-01-103(V).) And his love interest had balked at having to give her contact information to the prison to communicate with him.

Amber Wallace, who had replaced Watkins as mailroom supervisor and was substituted in her place, *see* FED. R. CIV. P. 25(d), testified about how the mailroom operates. On any given day it receives up to a thousand letters. Four mailroom staff members screen incoming mail for safety risks and contraband, such as drugs and mail from other offenders, that threaten prison security. Not all security threats are immediately obvious. Offender-to-offender communications present a threat to prison security, Wallace testified, because offenders often write in codes that are difficult for staff to identify and understand. Staff therefore automatically confiscate this type of correspondence. She had recognized coded messages in at least three pieces of offender-to-offender mail that she personally handled. She was not able to find any record of Littler asking for permission to communicate with restricted individuals.

At the close of trial, the district court entered findings of fact and conclusions of law. It ruled that, though the policy implicated Littler's First Amendment rights, it was not unconstitutional because the prison had presented sufficient evidence that the policy was reasonably related to its interest in preserving prison security. Littler could still communicate with other offenders under the policy (with advance permission). And accepting the communications would likely drain prison resources by increasing the amount of mail to be individually inspected by the prison staff. Littler appealed.

We begin with Littler's argument that the prison's policy violates the First Amendment. Prisoners have a protected First Amendment interest in receiving mail. *See Turner v. Safley*, 482 U.S. 78, 84 (1987); *Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005). Prison regulations that restrict this interest are nevertheless valid if they relate reasonably to a legitimate penological interest. *Turner*, 482 U.S. at 89–90; *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). To determine reasonableness, we consider whether there is a valid, rational connection between the prison's objective and the regulation, whether alternative means of exercising the right are available, whether accommodating the asserted right unduly impacts the prison's resources, and whether obvious, easy alternatives exist to accommodate the prisoner's rights. *Turner*, 482 U.S. at 89–90; *Munson*, 673 F.3d at 633.

Littler argues the policy is not reasonably related to a legitimate penological interest because communication with probationers does not present the same degree of security risks as communication between current inmates. He also contends that it is arbitrary and punitive because prison officials can deny approval, and approvals are rescinded if inmates are placed on restricted status. But even if we assume (Littler presented no evidence of this theory) that communications with probationers present less risk than with other prisoners, Littler must overcome the substantial discretion granted to prison officials in determining "appropriate means of furthering penological interests." *Turner*, 482 U.S. at 89; *Koger v. Dart*, No. 19-2892, slip op. at 3–4 (7th Cir. Feb. 25, 2020); *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (the burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it").

Here, the prison explained that the regulation furthers prison security because staff struggle to identify coded language used by current and former inmates. *See Turner*, 482 U.S. at 93. Prison security is a sufficiently important government interest to justify limitations on First Amendment rights. *See Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). And placing restrictions on mail prone to coded language logically relates to that goal and is not an "exaggerated response." *See Turner*, 482 U.S. at 90–91, 93 (upholding restriction on offender-to-offender mail in part because "prisoners could easily write in jargon or codes to prevent detection"). Requiring the four-person mailroom staff to read all prisoner-to-prisoner mail for coded messages—rather than confiscating them as a class—could fail to achieve the same goal because, as Wallace explained, the use of coded language is not always obvious. The policy leaves open alternative means of communication: inmates may request permission to communicate with restricted individuals and challenge the confiscation of mail through the grievance system; subject to some restrictions, they may also communicate with former inmates

over the telephone. *See* IND. DEP'T OF CORR. MANUAL OF POL'Y & PROC., No. 02-01-105. That the prison may deny an inmate's request for permission to communicate with another offender—if, for example, an inmate is on restricted status for investigatory reasons or a particular correspondent poses an intolerable risk—does not make these alternative means categorically insufficient. The policy is meant to intercept a type of mail that the prison has determined poses the most risk to prison security. It therefore survives scrutiny under the *Turner* test.

We turn now to Littler's challenges to the district court's pre-trial rulings. Littler insists that the district court should have allowed his claim for damages against Watkins for confiscating and destroying his letter. But qualified immunity shields prison officials from liability when their conduct does not violate clearly established rights. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Van den Bosch v. Raemisch*, 658 F.3d 778, 786–87 (7th Cir. 2011). And there is no clearly established First Amendment right for prisoners to read unregulated mail from other offenders. We have previously signaled that "[t]he right of a prison inmate to read the mail he receives, *provided that his reading it would not infringe the prison's legitimate interests*, is … clearly established." *Williams v. Hansen*, 837 F.3d 809, 811 (7th Cir. 2016) (emphasis added). Here, whether preventing inmates from reading mail from other offenders was justified by a legitimate interest was a disputed issue for trial. From cases like *Turner*, in which courts have upheld policies restricting correspondence among prisoners, 482 U.S. at 93, Watkins could not have known that confiscating mail from someone who appeared to be an Indiana probationer under a policy restricting inmate correspondence clearly violated the First Amendment. And as our discussion of the policy's constitutionality demonstrates, the issue does not obviously resolve in Littler's favor. Therefore, the district court properly concluded that Watkins had qualified immunity with respect to his claim for damages.

Littler further maintains, perhaps just to preserve the argument for further review, that the district court erred in dismissing his Fourth Amendment claim because destroying his letter was an arbitrary and unconstitutional seizure. As he appears to concede, that argument is foreclosed by precedent. *See e.g., Hudson v. Palmer*, 468 U.S. 517, 525–27 (1984); *United States v. Whalen*, 940 F.2d 1027, 1034–35 (7th Cir. 1991).

Finally, Littler insists that the district court abused its discretion when it declined to allow him to amend his complaint to include a due process claim because, he urges, the Indiana Tort Claims Act is not an adequate post-deprivation remedy for the destruction of personal property by prison officials. We have suggested as much,

*see Belcher v. Norton*, 497 F.3d 742 (7th Cir. 2007), but the point is immaterial here. The policy itself appears to provide a remedy. Through procedures for requesting approval to communicate with other offenders and appealing the confiscation of mail, it provides notice and opportunity to be heard both before and after mail is confiscated. And mail is destroyed only if inmates do not make their own arrangements for it. The evidence at trial shows that Littler did not make full use of these procedures: he did not ask for advance permission to communicate with anyone, and he failed to direct the staff to send the letter elsewhere. On this record, he cannot argue that a different procedure would have substantially decreased the risk of an erroneous deprivation of property.

We have considered Littler's other claims, and none has merit.

AFFIRMED